UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————

Lehr Construction Corp.,

                Debtor,

———————————————————————

J.K.L. Sales, Inc.,

                Appellant,

       -v-

Jonathan L. Flaxer,

                Appellee.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: FEB 02 2017

16-cv-4048 (AJN)

MEMORANDUM &
ORDER

ALISON J. NATHAN, District Judge:

In this appeal, the Court must determine whether the Bankruptcy Court abused its discretion in refusing to grant Appellant J.K.L. Sales, Inc.'s ("J.K.L. Sales") motion for an extension of time to file a notice of appeal. The Court concludes that, because J.K.L. Sales failed to demonstrate excusable neglect, the Bankruptcy Court did not abuse its discretion in denying the motion for an extension of time. The Bankruptcy Court's judgment is therefore affirmed.

I.    BACKGROUND[1]

This case arises from the proceedings surrounding Debtor Lehr Construction Corporation's ("Lehr") bankruptcy. On February 21, 2011, Lehr filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Bankr. Dkt No. 1. Appellee Jonathan L. Flaxer was named as the Chapter 11 trustee. Bankr. Dkt No. 199; Bankr. Dkt No. 1283 at 33.

---

[1] The facts are taken from the record on appeal, as designated by the parties. Dkt Nos. 3-4. Citations are frequently to the Bankruptcy Court's docket, No. 11-bk-10723 (SHL).

1

Appellant J.K.L Sales filed a claim against the estate. The claim was based on the following allegations. In 2007, Lehr hired J.K.L. Sales as a subcontractor for a project known as the Chapin School. Bankr. Dkt No. 1283 at 4; Appellee Br. at 2 (Dkt No. 13). J.K.L. Sales stopped working on the project when Lehr failed to remit payment. Bankr. Dkt No. 1283 at 4-5; Appellee Br. at 2. J.K.L. Sales subsequently filed a mechanic's lien in the amount of $447,049.41. Bankr. Dkt No. 1283 at 5; Appellee Br. at 2. In 2008, Lehr purchased a bond to discharge the mechanic's lien. Bankr. Dkt No. 1283 at 5, 23; Appellee Br. at 2. Travelers Casualty and Surety Company acted as a surety on the bond. Bankr. Dkt No. 1283 at 23; Appellee Br. at 2-3.

In 2012, after Lehr had filed for bankruptcy and J.K.L. Sales had filed a claim against the estate in that court, J.K.L. Sales filed an action in state court to foreclose on the bond. Bankr. Dkt No. 1283 at 33; Appellee Br. at 3. In order to proceed with the state court action, J.K.L. Sales needed to obtain stay relief from the Bankruptcy Court. Bankr. Dkt No. 1283 at 5; Appellee Br. at 3; *see Uto v. Job Site Servs., Inc.*, 444 B.R. 222, 223 (E.D.N.Y. 2011) ("Section 362 of the United States Bankruptcy Code automatically stays the commencement or continuation . . . of a judicial . . . action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title." (ellipses in original) (citation and quotation marks omitted)). J.K.L Sales and the bankruptcy trustee entered into a stipulation providing J.K.L. Sales with the required stay relief, but only if J.K.L. Sales agreed to waive any claims it had against the bankruptcy estate. Bankr. Dkt No. 1283 at 12, 34; Appellee Br. at 3. The bankruptcy judge signed off on this stipulation. *Id.* After this first stipulation and order was signed, J.K.L Sales determined that its original state court action was

2

stale, so it commenced a second action in state court to foreclose on the bond. Bankr. Dkt No. 1283 at 34; Appellee Br. at 3. Once again, the action could proceed only if the Bankruptcy Court lifted the stay. Thus, the parties again entered into a stipulation that granted relief from the stay "to allow J.K.L. to commence the Second Foreclosure Action against Lehr," but only if J.K.L. Sales agreed to "waive[] any and all claims it ha[d] or may have [had] against the Debtor's bankruptcy Estate." Bankr. Dkt No. 1283 at 34-35. The bankruptcy judge signed the stipulation on February 28, 2014. Bankr. Dkt No. 1283 at 36.

J.K.L. Sales then lost its state court litigation. On August 14, 2015, the state court granted summary judgment in favor of Travelers Casualty and Surety Company as surety for Lehr. Bankr. Dkt No. 1283 at 41-43; Appellee Br. 4. The state court accordingly dismissed the case, noting that Bankruptcy Court "modified the automatic stay to allow this action to proceed, on the condition that . . . the plaintiff waived all claims against Lehr." Bankr. Dkt No. 1283 at 42. The state court's summary judgment decision therefore "dispose[d] of the action in its entirety." *Id.*

On February 5, 2016, J.K.L. Sales filed a motion with the Bankruptcy Court to reinstate its claim against the Lehr bankruptcy estate. Bankr. Dkt No. 1283. The parties briefed the issue, *see* Bankr. Dkt No. 1283, 1286, and on March 8, 2016, the Bankruptcy Court denied J.K.L. Sales motion, Bankr. Dkt No. 1293. Under Federal Rule of Bankruptcy Procedure 8002(a)(1), J.K.L. Sales had fourteen days to file a notice of appeal from this decision, meaning that the company needed to file its notice of appeal by March 22, 2016. J.K.L. Sales did not file a notice of appeal by that date. Instead, on April 7, 2016, J.K.L. Sales filed a motion to extend the time to file a notice of appeal. Bankr. Dkt No. 1297. The trustee opposed the motion. Bankr. Dkt No. 1299. On April 28, 2016, the Bankruptcy Court held a hearing on J.K.L. Sales' motion. Bankr. Dkt

3

No. 1301. On May 2, 2016, the Bankruptcy Court denied the motion to extend the time to file an appeal. *Id.* J.K.L. Sales then filed a notice of appeal with this Court on May 31, 2016. Dkt No. 1.

## II.  LEGAL STANDARD

In reviewing a bankruptcy court decision, the Court accepts the bankruptcy court's factual findings unless clearly erroneous and reviews its conclusions of law *de novo*. *In re Enron Corp.*, 419 F.3d 115, 124 (2d Cir. 2005) (citation omitted). "Bankruptcy court decisions to deny a request to file late are reviewed for abuse of discretion." *Id.* (citing *Pioneer Inv. Servs Co. v. Brunswick Assocs. L.P.*, 507 U.S. 380, 398 (1993)).

## III.  DISCUSSION

In order to succeed in this appeal, Appellant J.K.L. Sales must show that the Bankruptcy Court abused its discretion in determining that J.K.L. Sales had failed to show "excusable neglect" justifying an extension of the deadline for filing a notice of appeal. *See* Fed. R. Bankr. P. 8002(d)(1)(B). In its briefing before this Court, J.K.L. Sales argues that excusable neglect existed for two reasons: (1) J.K.L. Sales' counsel did not know the relevant timeframe for filing bankruptcy appeals, and (2) J.K.L. Sales' counsel has Parkinson's disease. As explained below, the Court concludes that neither proffered justification constitutes "excusable neglect."

### I.  J.K.L. Sales Must Demonstrate "Excusable Neglect"

Under Federal Rule of Bankruptcy Procedure 8002(a)(1), a party must file his notice of appeal "within 14 days after entry of the judgment, order, or decree being appealed." Here, the Bankruptcy Court denied J.K.L. Sales' motion to reinstate its claim on March 8, 2016. Bankr. Dkt No. 1293. Accordingly, J.K.L. Sales was required to file its notice of appeal by March 22,

2016. On April 7, 2016, sixteen days after this due date, J.K.L. Sales filed a motion for an extension of time to file a notice of appeal. Bankr. Dkt No. 1297.[2]

The Federal Rules of Bankruptcy Procedure permit a Bankruptcy Court to extend the time to file a notice of appeal. *See* Fed. R. Bankr. P. 8002(d). However, if the motion for an extension of time is filed after the initial fourteen-day window for filing the notice of appeal, the party seeking the extension must show "excusable neglect." *Id.*; *see also* Fed. R. Bankr. P. 9006(b). Because J.K.L. Sales filed its extension motion after the due date for filing a notice of appeal, this case thus turns on whether J.K.L. Sales demonstrated "excusable neglect" warranting the requested extension.

The Supreme Court has laid out a multi-factor test for determining what constitutes "excusable neglect." *Pioneer*, 507 U.S. 380. The four relevant factors are "[1] the danger of prejudice to the debtor, [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith." *In re Enron Corp.*, 419 F.3d at 122 (quoting *Pioneer*, 507 U.S. at 395). The Second Circuit Court of Appeals has "taken a hard line" when applying this rule, meaning that "excusable neglect" may be difficult to demonstrate. *Id.* (quoting *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 368 (2d Cir. 2003)).

The most important factor in determining whether excusable neglect exists is the "reason for the delay." As the Second Circuit has explained, in the typical case, the three other *Pioneer* factors (prejudice, length of the delay, and the movant's good faith) will weigh in favor of the party seeking the extension. *Id.* The Second Circuit's excusable neglect analysis therefore "focuse[s] on the third factor: the reason for the delay, including whether it was within the

---

[2] J.K.L. Sales' motion for an extension of time is dated April 4, 2016; however, it was not filed until April 7, 2016. Bankr. Dkt No. 1297.

reasonable control of the movant." *Id.* (citation and quotation marks omitted). As the Second Circuit has summarized, "the four *Pioneer* factors do not carry equal weight; the excuse given for the late filing must have the greatest import." *Id.* at 123 (alteration omitted) (citation omitted). The Court thus turns to analyzing the reason for the delay in this case.

## II. J.K.L. Sales Has Not Demonstrated Excusable Neglect

On appeal, counsel for J.K.L. Sales proffers two "reasons for the delay" in filing its notice of appeal, both of which counsel contends satisfy the "excusable neglect" standard. First, counsel argues that he was unaware of the time frame to file a notice of appeal in a bankruptcy case. Appellant Br. at 4 (Dkt No. 12). Second, counsel argues that his disability precluded him from filing a timely notice of appeal or an earlier motion for an extension. *Id.* at 4-5. For the following reasons, the Court finds neither of these arguments persuasive.

Counsel for J.K.L Sales' first argument as to why excusable neglect exists here is simply that he was unaware of the time frame for filing a notice of appeal. Counsel writes:

> It was not known by anyone that the 10 day [*sic*] rule applied to appeals in bankruptcy. We have seen appeal time requirements of 30 days previously, and that is the usual amount, but it was a big surprise to have the 10 days rule pop up so fast, when you go aound [*sic*] in the usual course of everyday in the courts & usually there is more time.

Appellant Br. at 4.[3] In short, it appears that counsel failed to look up the relevant rules and was "surprised" to discover the short timeframe for filing notices of appeal in bankruptcy cases.

This argument fails. The Second Circuit has stated that "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect." *In re Enron Corp.*, 419 F.3d at 126 (quoting *Pioneer*, 507 U.S. at 392). The Court has stated "that the equities will rarely if ever favor a party who fails to follow the clear dictates of a court rule and

---

[3] J.K.L Sales' counsel repeatedly refers to a "10 day rule" for bankruptcy appeals. Appellant Br. at 4; Bankr. Dkt No. 1297 at 2. The Court notes that, under Federal Rule of Bankruptcy Procedure 8002(a), a party has fourteen — not ten — days to file a notice of appeal.

6

that where the rule is entirely clear, we continue to expect that a party claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test." *Id.* at 123 (alteration, citation, and quotation marks omitted). Here, the rules governing the filing of a notice of appeal were clear. Federal Rule of Bankruptcy Procedure 8002(a)(1) states: "(1) *Fourteen-Day Period.* Except as provided in subdivisions (b) and (c), a notice of appeal must be filed with the bankruptcy clerk within 14 days after entry of the judgment, order, or decree being appealed." J.K.L. Sales' counsel does not claim that there was anything confusing or misleading about this procedural rule. Rather, it seems that counsel simply failed to read the relevant provision of the bankruptcy rules. Appellant Br. at 4. But "appellant's counsel was obligated to check the Federal Rules of Bankruptcy Procedure to determine the applicable deadlines for filing his client's appellate brief." *Seinfeld v. Worldcom, Inc.*, No. 06 Civ. 13274 (DLC), 2007 WL 987867, at *3 (S.D.N.Y. Apr. 4, 2007). His failure to do so does not constitute excusable neglect. *See In re Enron Corp.*, 419 F.3d at 123-24 ("[W]hen a party's or counsel's misunderstanding of clear law or misreading of an unambiguous judicial decree is the reason for the delay . . . we have continued to uphold findings of no excusable neglect where the court cited the absence of unique or extraordinary circumstances." (ellipsis in original) (citation and quotation marks omitted)); *see also In re Johns–Manville Corp.*, 476 F.3d 118, 124 (2d Cir. 2007) ("[A]bsent extraordinary circumstances, attorney inadvertence is not excusable neglect."); *Weinstock v. Cleary, Gottlieb, Steen & Hamilton*, 16 F.3d 501, 503 (2d Cir. 1994) (concluding that counsel's "own ignorance" of the appropriate rule of procedure did not constitute excusable neglect). Although this outcome may seem harsh to the appellant, J.K.L. Sales is bound by the mistakes of its counsel. *See In re Enron Corp.*, 419 F.3d at 123.[4]

---

[4] J.K.L. Sales' counsel also argued to the Bankruptcy Court that excusable neglect existed because both counsel and his client were busy. Bankr. Dkt No. 1297 at 2 ("The delay resulted from movant's and his counsel's busy

Next, J.K.L Sales argues that excusable neglect exists in light of its attorney's disability. Counsel writes:

> Also as to me personally, my disability status is that I am disabled, and receive Social Security, and I have Parkinson's disease. Attached is my doctor's certificate of medical status. Work is harder for me, but I have continued so far. It is harder for me now to get work accomplished, and I must take special care to allow myself mobility and the energy to accomplish tasks, including those of regular daily living.

Appellant Br. at 4-5. To support his claim, counsel attached to his brief a certificate from his doctor dated June 1, 2015 verifying that counsel has Parkinson's disease. Appellant Br. at 6.

There are two problems with this argument. First, counsel did not raise it below. In J.K.L. Sales' briefing to the Bankruptcy Court, the only grounds for "excusable neglect" raised were that counsel did not know about the deadline for filing a notice of appeal and that counsel and his client were busy. *See* Bankr. Dkt No. 1297 ("The delay resulted from movant's and his counsel's busy schedules, and from not being aware that [the notice of appeal] was due as soon as stated. Usually are seen [*sic*] longer periods for a notice of appeal, usually 30 days."); Bankr. Dkt No. 1300. Counsel did not raise the issue of his Parkinson's disease. *See id.* This means that counsel has waived the opportunity to assert this argument. *In re Salander*, 503 B.R. 559, 569 (S.D.N.Y 2013) ("[I]ssues not raised in bankruptcy court cannot be raised in first instance on appeal."); *In re Best Payphones, Inc.*, 432 B.R. 46, 60 (S.D.N.Y. 2010). Furthermore, the Court

---

schedules."). Counsel does not repeat this argument to this Court, and thus the Court need not consider it. Nonetheless, the Court notes that a busy schedule does not constitute "excusable neglect." *See, e.g. In re Enron Corp.*, 419 F.3d at 125 (concluding that no excusable neglect existed when counsel "was distracted by extensive negotiations" with the opposing party); *Doroz v. TECT Utica Corp.*, No. 6:12–CV–391 (MAD/ATB), 2013 WL 5786641, at *4 (N.D.N.Y. Oct. 28, 2013) ("Preoccupied and overworked staff does not establish excusable neglect, and neither does inadvertence." (citations and quotation marks omitted)); *Lucio v. N.Y.C. Dep't of Ed. & Marie Douyon*, No. 12 Civ. 247 (DAB), 2013 WL 12084546, at *3 (S.D.N.Y. May 16, 2013) ("A court will not find excusable neglect based upon an attorney's inability to manage his caseload."); *In re Morris*, 252 B.R. 41, 46 (S.D.N.Y. 2000) (noting that a "[l]aw office upheaval does not justify relieving the client of the consequences of his attorney's actions" and that "proof of an attorney's negligence rarely establishes 'excusable neglect'").

8

cannot rely on evidence not contained within the Bankruptcy Court record, such as the doctor's certificate submitted by counsel to this Court documenting his Parkinson's disease. *In re Campbell*, 539 B.R. 66, 72 (S.D.N.Y. 2015) ("In reviewing a decision of a bankruptcy court, . . . the district court may not consider evidence outside the record."); *In re Barrick Grp., Inc.*, 100 B.R. 152, 154 (D. Conn. 1989) ("The record on appeal should contain all items considered by the bankruptcy court in reaching a decision.").

Second, even if counsel had not waived reliance on his disability, the Court would find it insufficient to establish excusable neglect. Illness or disability alone does not constitute excusable neglect. *See Kingvision Pay-Per-View Ltd v. La Aroma Del Café, Inc.*, No. CV-02-0786 (CPS), 2006 WL 842398, at *2 (E.D.N.Y. Mar. 27, 2006); *Carcello v. TJX Cos., Inc.*, 192 F.R.D. 61, 64 (D. Conn. 2000); *Andree v. Ctr. for Alt. Sentencing and Employment Servs., Inc.*, No. 92 Civ. 616 (TPG), 1993 WL 362394, at *2 (S.D.N.Y. Sept. 14, 1993). While courts will occasionally rely on the illness or disability of a party or attorney when finding excusable neglect, these cases involve extraordinary circumstances, such as a sudden, unexpected, or catastrophic illness,[5] or the party has pointed to specific facts and circumstances demonstrating why the illness or disability caused them to miss the original deadline.[6] Neither of these requirements is met here. J.K.L. Sales' counsel's disability was not sudden, unexpected, or

---

[5] *In re Hess*, 347 B.R. 489, 500 (D. Vt. 2006) (finding "exigent circumstances" under a bankruptcy provision where the attorney "suffered a catastrophic, life threatening illness that caused her to be out of her office for several months and unable to work for most of that time"); *Active Glass Corp. v. Architectural and Ornamental Iron Workers Local Union 580*, 899 F. Supp. 1228, 1231 (S.D.N.Y. 1995) ("Illness of counsel has been regarded as valid grounds for excusable neglect where 'the illness is so physically and mentally disabling that counsel is unable to file the appeal and is not reasonably capable of communicating to co-counsel his inability to file.'" (quoting *Islamic Republic of Iran v. Boeing Co.*, 739 F.2d 464, 465 (9th Cir. 1984)).

[6] *Epps v. City of Schenectady*, No. 1:10–CV–1101 (MAD/CFH), 2013 WL 4455621, at *3 (N.D.N.Y. Aug. 16, 2013) (rejecting excusable neglect argument because "plaintiff did not provide any information or documentation regarding his illness and did not explain why his illness rendered him unable to timely file a notice of appeal"); *In re Hess*, 347 B.R. at 500; *Bethea v. Potter*, No. 01 Civ. 3548(DFE), 01 Civ. 11492(DFE), 2003 WL 22023968, at *3 (S.D.N.Y. Aug. 27, 2003).

catastrophic. J.K.L. Sales' counsel does not state exactly when he became first aware of his Parkinson's disease, but the doctor's certificate he provided to the Court is dated June 1, 2015. Appellant Br. at 12. This suggests that counsel was aware of disability, at the very least, nearly ten months before the due date for J.K.L. Sales' notice of appeal. Furthermore, during this time frame, counsel managed to file a motion to reinstate J.K.L. Sales' claim. Bankr. Dkt No. 1283. This indicates that counsel's disability was not catastrophic or "so physically and mentally disabling that counsel [wa]s unable to file the appeal." *Active Glass Corp. v. Architectural and Ornamental Iron Workers Local Union 580*, 899 F. Supp. 1228, 1231 (S.D.N.Y. 1995) (quoting *Islamic Republic of Iran v. Boeing Co.*, 739 F.2d 464, 465 (9th Cir. 1984)).

Furthermore, counsel has presented no specific facts explaining why his Parkinson's disease prevented him from filing a timely notice of appeal. *Epps v. City of Schenectady*, No. 1:10–CV–1101 (MAD/CFH), 2013 WL 4455621, at *3 (N.D.N.Y. Aug. 16, 2013) (finding no excusable neglect partly because plaintiff "did not explain why his illness rendered him unable to timely file a notice of appeal"); *Bethea v. Potter*, No. 01 Civ. 3548(DFE), 01 Civ. 11492(DFE), 2003 WL 22023968, at *3 (S.D.N.Y. Aug. 27, 2003). While the Court is sympathetic that counsel's disability may make his job more difficult, the Court cannot conclude that it prevented counsel from filing a timely notice of appeal, especially given that counsel managed to file a motion during the same time period he claims his disability prevented him from working. To find excusable neglect in this case would essentially relieve J.K.L. Sales' counsel from ever filing a timely notice of appeal in any of his cases, as he could always simply raise his Parkinson's disease as a fact justifying a finding of "excusable neglect." *See In re Enron Corp.*, 419 F.3d at 132 (noting that "excusable neglect" arguments should not be so generic as to "open[] . . . the 'floodgates' to similar claims").

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that counsel for J.K.L. Sales has not proffered facts demonstrating "excusable neglect" for the failure to file a timely notice of appeal. The Bankruptcy Court therefore did not abuse its discretion in denying the motion for an extension of time to file a notice of appeal.

The judgment of the Bankruptcy Court is AFFIRMED. The Clerk of Court is directed to close this case.

SO ORDERED.

Dated: Feb. 2, 2017
New York, New York

_____
ALISON J. NATHAN
United States District Judge